Irving L. Berg (SBN 36273)
THE BERG LAW GROUP
145 Town Center, PMB 493
Corte Madera, California 94925
(415) 924-0742
(415) 891-8208 (Fax)
irvberg@com.cast

ATTORNEY FOR PLAINTIFF
AND A PUTATIVE CLASS

UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

GADDIEL UMLAS, on behalf of himself and all others similarly situated,

Plaintiff,

v.

MAIN STREET ACQUISITION CORP.; STEVE STEWART; BRETT SAMSKY, as Corporate Officers of MAIN STREET ACQUISITION CORP; NELSON and KENNARD, a general partnership; and ROBERT SCOTT KENNARD, an individual,

Defendants.
/

Case No.:

**CLASS ACTION**

**COMPLAINT TO RECOVER STATUTORY DAMAGES FOR VIOLATION OF CONSUMER DEBT COLLECTION STATUTES, 15 U.S.C. § 1692 *et. seq.*, CAL. CIV. CODE. § 1788 *et. seq.***

**DEMAND FOR JURY TRIAL**

## I. INTRODUCTION

This action is brought by Gaddiel Umlas, a California consumer as an individual on behalf of a class of California consumers challenging the debt collection practices of Defendants that violate Federal and State law. These practices include churning out consumer debt collection lawsuits by attorneys using facsimile attorney signatures that were false, deceptive and misleading *inter alia* because the attorney has not made a considered professional judgment in reviewing the underlying claim and prosecution of the claim knowing that it lacked credible evidence to maintain the lawsuit. These false representations are prohibited by the

"FDCPA" (15 U.S.C. § 1692e) and the "CA FDCPA" (Cal. Civ. Code § 1788.1).

Because of the Defendants' conduct, Defendants are liable to Plaintiff and the class for damages of a sum not to exceed the lesser of $500,000 or 1 percentum of the net worth of the Defendants. Additionally, Plaintiff seeks attorney's fees incurred in prosecuting the action and costs of litigation.

**A. LEGISLATIVE HISTORY**

1. Congress, in 1977, enacted the Fair Debt Collection Practices Act (15 U.S.C. § 1692 *et. seq.*) with the objective of regulating the conduct of debt collectors engaged in the collection of consumer debts due others.

2. Initially, debt collection attorneys argued the act did not regulate their practice. That argument was put to rest by legislation and the Supreme Court in Heintz v. Jenkins, 514 U.S. 291 (1995) when the Court held "the Act does apply to attorneys engaged in litigation". Also, the conduct of attorneys is governed by the attorneys' professional standards and specifically under the FDCPA at 15 U.S.C. § 1692 e(3) which prohibits the making of a false representation that a communication is from an attorney. Case law specifically mandates that collection attorneys must make a considered professional judgment in their communications to consumers, Nielsen v. Dickersen, 307 F3d 623 (7th Cir. 2002).

3. In this action, Plaintiff alleges the Defendants' attorneys NELSON & KENNARD ("N&K") and ROBERT SCOTT KENNARD ("KENNARD") conduct a factory-like debt collection business using the facsimile signature of an attorney resulting in the "robotic" execution of communications without an attorney having made a considered professional judgement of the underlying claims.

4. The conduct of Defendants' attorneys exposes Main Street to vicarious liability in a sum not to exceed the lesser of $500,000 or 1% of its net worth, 15 U.S.C. § 1692ka2(B); Fox v. Citicorp Credit Svc., 15 F3d 1057 (9th Cir. 1994).

5. Plaintiff and the class seek statutory damages against the Defendants under the Federal statute and a similar sum under the State statute; Gonzales v. Arrow Fin Servs LLC, 660

F3d 1056 (9th Cir. 2011).

6. In pursuing an FDCPA claim, Congress recognized that enforcement of the Act is most effective when done by the private bar and accordingly attorney's fees and costs are sought by Plaintiff from Defendants; Tolentino v. Friedman, 46 F3d 645 (7th Cir. 1995).

7. Liability is imposed on Defendants Stewart and Samsky as officers and directors of Defendant Main Street as they direct and control the collection activities of Main Street.

8. Similar liability is imposed on Defendant Kennard as he directs and controls the collection activities of N&K. Defendant Kennard is a debt collector pursuant to 15 U.S.C. § 1692 a(6).

## II. JURISDICTION AND VENUE

9. Jurisdiction in this Court is conferred by 15 U.S.C.§ 1692k(d), and 28 U.S.C. § 1331. Supplemental jurisdiction is conferred by 15 U.S.C. § 1367. Venue is proper in this district because Defendants transact business in this district and Defendants' collection communications were received in this district.

## III. PARTIES

10. Plaintiff, GADDIEL UMLAS ("Umlas") resides in this district. Umlas is a natural person and a consumer within the meaning of 15 U.S.C. 1692(a)(3).

11. Main Street is a Nevada Corporation engaged in a business, the principal purpose of which is to collect directly or indirectly consumer debts owed or due or asserted to be due another. Main Street is a debt collector pursuant to 15 U.S.C. § 1692(a)(6) and Ruth v. Triumph Partnership, 559 F3d70 (7th Cir. 2009).

12. Main Street has an office at 2877 Paradise Drive, Unit 303, Las Vegas, Nevada. Defendant Main Street's principal office for service is at 3715 Davinci Court, Suite 200, Norcross, GA 30092, Attn: General Counsel.

13. Defendant STEVE STEWART ("Stewart") is the President and a director of Main Street. Defendant BRETT SAMSKY ("Samsky") is the Secretary of Main Street. These corporate officers direct, control and manage the collection activities of Defendant Main Street.

14. Defendants Stewart and Samsky are debt collectors pursuant to 15 U.S.C. § 1692(a)(6).

15. Defendants Stewart and Samsky are served at 3715 Davinci Court, Suite 200, Norcross, GA 30092.

16. Defendant NELSON & KENNARD ("N&K") is a general partnership of attorneys engaged in the business of collecting debts in this state. N&K's principal place of business is located at: 2180 Harvard Street, Suite 160, Sacramento, California 95815. N&K may be served at: Nelson & Kennard, c/o Robert Scott Kennard, General Partner, 2180 Harvard Street, Suite 160, Sacramento, California 95815.

17. The principal business of N&K is the collection of consumer debts. N&K is a debt collector pursuant to 15 U.S.C. § 1692 (a)(6).

18. Defendant Nelson Scott Kennard ("Kennard") directs and controls the collection practices of N&K and regularly attempts to collect debts alleged to be due another by filing and maintaining numerous civil debt collection lawsuits on behalf of Main Street with only cursory knowledge of the legal merit of the claims, not having credible proof of the agreement between plaintiffs and their creditors. He fails to exercise a considered professional judgment in lending his name to the collection communications. Kennard is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6). Kennard may be served at his current business address at: Robert Scott Kennard, 2180 Harvard Street, Suite 160, Sacramento, California 95853.

19. At all times herein mentioned, each of the Defendants was an officer, director, agent, servant, employee and/or joint venturer of their co-defendants, and each of them, and at all said times, each Defendant was acting in the full course and scope of said officer, directorship, agency service, employment and/or joint venture. Any reference hereafter to "Defendants" without further qualification is meant by Plaintiff to refer to each Defendant, and all of them, named above.

## IV. FACTUAL ALLEGATIONS UNIQUE TO PLAINTIFF AND THE CLASS

20. On March 7, 2013, Plaintiff was sent a communication from Defendant

concerning an alleged debt incurred by Plaintiff for the purchase of consumer goods and services.

21. The communication was designated as a Summons and included a Complaint (Exhibit 1, 1-4) to recover money in the sum of $5,674.65, attorney's fees and interest at the rate of 10% per year from June 30, 2010.

22. The basis of the claim was an alleged credit card account purchased by JPMorgan Chase ("Chase" a non-party) and issued by Washington Mutual, ("WaMu") a defunct financial institution.

23. On September 25, 2008, the United States Office of Thrift Supervision (OTS) had seized Washington Mutual Bank from Washington Mutual, Inc. and placed WaMu into a receivership with the Federal Deposit Insurance Corporation (FDIC).

24. The FDIC, five days thereafter sold most of the WaMu assets to JPMorgan Chase (a non-party). The assets included the alleged WaMu accounts in default including Ulass' acount and those of members of the class.

25. Chase, the owner of the account, on November 22, 2010, sold, transferred and/or assigned the defaulted WaMu accounts to Defendant Main Street, a debt buyer. The "Bill of Sale" as relevant is attached hereto as (Exhibit 2).

26. Defendant Main Street, as a debt buyer, in its debt collection business sells its accounts to other debt buyers or, as relevant here, assigns its accounts to a network of debt collection attorneys to force collection through the courts. Defendant Main Street is a debt collector pursuant to 15 U.S.C. § 1692a(3); Ruth v. Triumph Partnership, 559 F3d70 (7th Cir. 2009).

27. Defendant N&K is one of the network of attorneys enlisted by Main Street to file lawsuits on behalf of Main Street.

28. The communication referred to as (Exhibit 1, 1-4) bears a facsimile signature of Defendant Robert Scott Kennard.

29. The communication was false, deceptive and misleading in violation of 15 U.S.C. § 1692(e), as the attorney had not reached a considered professional judgment that the

claim was legally credible. He had only a superficial knowledge of the claim having failed to review the alleged agreement between plaintiff and WaMu. Defendant Kennard by the use of the facsimile attorney representation engaged in conduct that was deceptive in debt collection was in violation of 15 U.S.C. § 1692e and 15 U.S.C. § 1692e(3) and 15 U.S.C. § 1692e (10).

30. Defendant had only cursory information about the individual account as Defendant failed or was unable to obtain copies of the alleged agreement with WaMu as permitted by paragraph 6 of the sales agreement (Exhibit 2-1).

## V. CAUSE OF ACTIONS

### COUNT I
### (Violation of the FDCPA)

31. Plaintiff incorporates the foregoing paragraphs as though fully set forth hereto.

32. Defendants violate 15 U.S.C. § 1692e by the " robotic" signature of Defendant Kennard leading to the false, deceptive and misleading representation that an attorney had made a considered professional judgment that Plaintiff was a candidate for legal action. Said communication also violates 15 U.S.C. §§ 1692e(3) and e(10).

### COUNT II
### (Violation of CA FDCPA)

33. Plaintiff incorporates the foregoing paragraphs as though fully set forth hereto.

34. Plaintiff incorporates the violation of the FDCPA as alleged above pursuant to Cal. Civ. Code § 1788.17

## VI. CLASS ALLEGATIONS

35. Plaintiff brings this action on behalf of a class pursuant to Fed. R .Civ .P. 23(a) and 23(b)(3).

36. The class consists of (a) all natural persons in California (b) to whom Defendant sent a communication in the same or similar facsimile signature of Robert Scott Kennard represented by Exhibit 1, 1-4 to California consumers, (c) which communications were sent on or after a date one year prior to the filing of this action.

37. Plaintiff alleges on information and belief based on Defendant's use of a facsimile signature of Nelson Scott Kennard is so numerous that joinder of all class members is impractical. On information and belief there are more than one hundred (100) class members.

38. There are questions of law and fact common to the class, which common questions predominate over any questions involving only individual class members. The principal question is whether Defendant's communication in the same or similar form of Exhibits 1,1-4 violate the Federal FDCPA as alleged in Plaintiff's first and second claims for relief.

39. Plaintiff's claims are typical of the class members. All are based on the same facts and legal theories.

40. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in handling class actions involving unlawful practices under the Federal FDCPA. Neither Plaintiff nor Plaintiff's counsel has any interests which would cause them not to vigorously pursue this action.

41. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is appropriate in that:

a. The questions of law or fact common to the members of the class predominate over any questions affecting only individual members.

b. A Class Action is superior to other available methods for the fair and efficient adjudication of the controversy.

42. Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that Defendant acted on grounds generally applicable to the class thereby making appropriate declaratory relief with respect to the class as a whole.

43. Plaintiff requests certification of a hybrid class combining the elements of Rule 23(b)(3) for monetary damages and Rule 23(b)(2) for equitable relief.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated requests of this Court the following monetary and equitable relief:

44.

A. An Order certifying that the action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and Plaintiff's undersigned counsel to represent the Class.

B. Pursuant to 15 U.S.C. § 1692k(a)(2)(B) statutory damages of (a) $2,000.00 for the named Plaintiff and (b) a sum not to exceed the lesser of $500,000.00 or 1 per centum of the net worth of Defendants for all other class members.

C. Reasonable attorney fees and costs pursuant to 15 U.S.C. 1692k(a)2(B)(3).

D. Such other and equitable relief as this Court may deem necessary or proper.

E. Attorney's fees, litigation expenses and costs; and

F. Such other or further relief as the Court deems appropriate

Dated: February 20, 2014

Irving L. Berg /s/

Irving L. Berg
THE BERG LAW GROUP
145 Town Center, PMB 493
Corte Madera, California 94925
(415) 924-0742
(415) 891-8208 (Fax)

ATTORNEY FOR PLAINTIFF AND PUTATIVE CLASS

**JURY DEMAND**

Plaintiff demands trial by jury.

Dated: February 20, 2014

Irving L Berg /s/
Irving L. Berg

PLD-C-001(2)

| SHORT TITLE: MAIN STREET ACQUISITION CORP v. GADDIEL UMLAS, et al. | CASE NUMBER: |
|---|---|

## FIRST (number) CAUSE OF ACTION–Common Counts

ATTACHMENT TO [X] Complaint [ ] Cross-Complaint

*(Use a separate cause of action form for each cause of action.)*

CC-1. Plaintiff *(name)*: MAIN STREET ACQUISITION CORP

alleges that defendant *(name)*: GADDIEL UMLAS ;

became indebted to [ ] plaintiff [X] other *(name)*: predecessor in interest, CHASE BANK USA, NA successor by merger to WASHINGTON MUTUAL BANK

a. [X] within the last four years
  (1) [X] on an open book account for money due.
  (2) [X] because an account was stated in writing by and between plaintiff and defendant in which it was agreed that defendant was indebted to plaintiff.

b. [X] within the last [ ] two years [X] four years
  (1) [ ] for money had and received by defendant for the use and benefit of plaintiff.
  (2) [ ] for work, labor, services and materials rendered at the special instance and request of defendant and for which defendant promised to pay plaintiff.
    [ ] the sum of $
    [ ] the reasonable value.
  (3) [X] for goods, wares, and merchandise sold and delivered to defendant and for which defendant promised to pay plaintiff
    [X] the sum of $ 5,674.65
    [ ] the reasonable value.
  (4) [ ] for money lent by plaintiff to defendant at defendant's request.
  (5) [ ] for money paid, laid out, and expended to or for defendant at defendant's special instance and request.
  (6) [ ] other *(specify)*:

CC-2. $ 5,674.65 which is the reasonable value, is due and unpaid despite plaintiff's demand, plus prejudgment interest [ ] according to proof [X] at the rate of 10.000 percent per year from *(date)*: 06/30/10

PLAINTIFF'S EXHIBIT 1-3

CC-3. [ ] Plaintiff is entitled to attorney fees by an agreement or a statute
  [ ] of $
  [ ] according to proof

CC.4. [X] Other: NOTE: For the purposes of CC-1(a.) and CC-1(b.), the term plaintiff refers to plaintiff's predecessor in interest, CHASE BANK USA, NA successor by merger to WASHINGTON MUTUAL BANK.



Form Approved for Optional Use
Judicial Council of California
PLD-C-001(2) [Rev. January 1, 2009]

CAUSE OF ACTION – Common Counts

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov



PLD-C-001

| SHORT TITLE: MAIN STREET ACQUISITION CORP v. GADDIEL UMLAS, et al. | CASE NUMBER: |
|---|---|

4. *(Continued)*
   b. The true names of defendants sued as Does are unknown to plaintiff.
      (1) [ X ] Doe defendants *(specify Doe numbers)*: 1 - 5 were the agents or employees of the named defendants and acted within the scope of that agency or employment.
      (2) [ X ] Doe defendants *(specify Doe numbers)*: 6 - 10 are persons whose capacities are unknown to plaintiff.
   c. [ ] Information about additional defendants who are not natural persons is contained in Attachment 4c.
   d. [ ] Defendants who are joined under Code of Civil Procedure section 382 are *(names)*:

5. [ ] Plaintiff is required to comply with a claims statute, and
   a. [ ] plaintiff has complied with applicable claims statutes, or
   b. [ ] plaintiff is excused from complying because *(specify)*:

6. [ ] This action is subject to [ ] Civil Code section 1812.10 [ ] Civil Code section 2984.4.
7. This court is the proper court because
   a. [ ] a defendant entered into the contract here.
   b. [ ] a defendant lived here when the contract was entered into.
   c. [ X ] a defendant lives here now.
   d. [ ] the contract was to be performed here.
   e. [ ] a defendant is a corporation or unincorporated association and its principal place of business is here.
   f. [ ] real property that is the subject of this action is located here.
   g. [ ] other *(specify)*:

8. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached)*:
   [ ] Breach of Contract
   [ X ] Common Counts
   [ ] Other *(specify)*:

9. [ X ] Other allegations: For good and valuable consideration, the account which is the subject of this action was purchased by Plaintiff, who is now the lawful owner and holder thereof.

   Prior to commencement of this action, the Defendant's were informed in writing that if an action were commenced, the Plaintiff may recover its court costs, where allowed by law, in addition to principal and interest otherwise owed.

10. **Plaintiff prays** for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
    a. [ X ] damages of $ 5,674.65
    b. [ X ] interest on the damages
       (1) [ ] according to proof
       (2) [ X ] at the rate of *(specify)*: 10.000 percent per year from *(date)*: 06/30/10
    c. [ ] attorney fees
       (1) [ ] of: $
       (2) [ ] according to proof.
    d. [ ] other *(specify)*:

PLAINTIFF'S EXHIBIT 1-4

11. [ ] The paragraphs of this pleading alleged on information and belief are as follows *(specify paragraph numbers)*:

Date: December 20, 2012

ROBERT SCOTT KENNARD
(TYPE OR PRINT NAME)

Robert Scott Kennard
(Signature of plaintiff or attorney)

*(If you wish to verify this pleading, affix a verification.)*





CHASE

# CREDIT CARD ACCOUNT PURCHASE AGREEMENT

Between

Chase Bank USA, N. A.

And

Main Street Acquisition Corp.

dated as of

October 12, 2010

Forward Flow (October 2010- December 2010)

Washington Mutual Primary Recall Portfolio



Confidential Information which may come to its attention and to take immediate steps to limit, stop, or otherwise remedy such misappropriation, disclosure or use.

(h) All representations and warranties contained the execution and delivery of the Closing as represented by the applicable Bill of Sale there for until the first anniversary thereof in this Section 4 shall survive.

(i) Purchaser agrees that it will not attempt to enforce any rights it may otherwise have under any arbitration clauses that may appear in Seller's Cardholder agreements.

5. **Operations**

(a) Seller may, or upon being notified in writing by Purchaser or by a Cardholder shall, report to each of the credit bureaus it uses, that the Accounts have been sold to Purchaser to the extent that each credit bureau provides such reporting. Except as set forth in the preceding sentence, Seller shall have no further obligation with respect to credit bureau reporting for the Accounts.

(b) Purchaser agrees not to refer any inquiries from a Cardholder whose Account is the subject of this Agreement to Seller but to handle any such inquiries directly with Seller.

(c) Purchaser represents and warrants that it shall continue to report to those credit bureaus to which it reports, after the Closing Date, appropriate updates with respect to each Charged-off Account purchased from Seller hereunder.

6. **Documentation**

(a) For a period of up to three (3) years from the Closing Date and upon receipt of a written request from Purchaser, Seller shall, to the extent such documents are reasonably available, provide Purchaser with copies of signed Account applications, applicable terms and conditions, and other media relating to the Charged-off Accounts, up to a maximum monthly number of documents of [redacted]% of the number of Charged-off Accounts sold hereunder. The fee for such service shall be free ($0) for the first ten percent (10%) per document provided for up to ten percent (10%) of the Charged-off Accounts. If the total number of documents requested is greater than ten percent (10%) but less than twenty-five percent (25%) of the Charged-off Accounts, Seller may, in its sole discretion, honor such requests and charge Purchaser ten dollars ($10.00) for each provided document. If the total number of documents provided exceeds twenty-five percent (25%) of the Charged-off Accounts, Seller may in its sole discretion honor such request and charge Purchaser fifty dollars ($50.00) for each document provided. Notwithstanding the foregoing, Seller shall have no obligation to retrieve or provide any documents to any assignee of the Purchaser without Seller's prior written consent.

(b) Payment for documents pursuant to subparagraph (a) is due thirty (30) days from Seller's invoice date.



